1

2

3

4

5

6                           **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

MAX BAER PRODUCTIONS, LTD.,              )

9                                        )
                    Plaintiff,           )
10                                       )          3:09-cv-00512-RCJ-RAM
            vs.                          )
11                                       )
RIVERWOOD PARTNERS, LLC,                 )          **ORDER**
12                                       )
                    Defendant.           )
13  _____  )

14          This case arises out of two interdependent failed real estate developments.  Pending before

15  the Court is Defendant's Motion to Dismiss (ECF No. 6).  For the reasons given herein, the Court

16  grants the motion.

17  **I.      FACTS AND PROCEDURAL HISTORY**

18          On or about September 25, 2007, Plaintiff Max Baer Productions, Ltd. ("Max Baer") and

19  Defendant Riverwood Partners, LLC ("Riverwood") entered into the Real Estate Sales Agreement

20  ("the Sales Agreement"), under which Plaintiff was to purchase from Defendant certain property.

21  (*See* Am. Compl. ¶ 4; ECF No. 6 Ex. 1; *id.* Ex. 1, Ex. A).  The Sales Agreement may in fact fail to

22  satisfy the statute of frauds for failure to describe the land.  "To satisfy the statute of frauds the

23  boundaries need only be 'ascertainable from the memorandum.'" *Wiley v. Cook*, 583 P.2d 1076,

24  1080 (Nev. 1978) (quoting *Durham v. Dodd*, 285 P.2d 747, 749 (Ariz. 1955)).  Exhibit A to Exhibit

25  1 to the Sales Agreement was to contain a delineation of the property.  Exhibit A, however, simply

1   indicates that the description of the property is "attached hereto," yet it is not. (*See id.* Ex. 1, Ex. A).

2   Exhibit B to Exhibit 1 to the Sales Agreement immediately follows Exhibit A, with no description

3   of the land attached in between.   The first page of the Sales Agreement gives the only description

4   of the property in the attached documents, describing it as approximately 21.42 acres in Douglas

5   County, Nevada, on the east side of a proposed road called Riverwood Drive. (*See id.* Ex 1, at 1).

6   The reader is directed to see Exhibit A to Exhibit 1 to the Sales Agreement for a better description.

7   This description is insufficient to convey real property.   It is possible that Defendant has simply

8   failed to attach Exhibit A to Exhibit 1 to the Sales Agreement, but the evidence in the record

9   currently indicates a Sales Agreement that does not satisfy the statute of frauds and which is

10   insufficient to convey real property.

11      On or about October 16, 2007, the parties entered into a Cost Sharing and Development

12   Agreement ("the Development Agreement"), which by its terms was to close concurrently with the

13   Sales Agreement, and under which Defendant was to undertake various improvements on its

14   property to establish utilities, roadways, and other infrastructure to service the casino and resort to

15   be built on Plaintiff's property, which was the property Plaintiff purchased from Defendant under

16   the Sales Agreement and which was adjacent to Defendant's property. (*See id.* Ex. 2, at 1).

17      On October 29, 2007, Plaintiff gave Defendant a deed of trust against 15.83 acres of property

18   to secure a $500,000 promissory note. (*See id.* Ex. 3; *id.* Ex. 3, Ex. A).   Plaintiff alleges that

19   Defendant has failed to obtain a required $27 million construction loan or to fulfill its development

20   obligations under section 4 of the Development Agreement.   (*See* Am. Compl. ¶ 8).   Defendant

21   argues that the Development Agreement only requires completion of the improvements sixty days

22   before Plaintiff completes its buildings, and Plaintiff has not even begun construction on any

23   buildings.   Plaintiff alleges that in July of 2008, Defendant returned to Plaintiff the deed of trust and

24   corresponding note it had given to Plaintiff. (*See id.* ¶ 9).   It is not clear whether Plaintiff means to

25   imply that Defendant thereby anticipatorily repudiated the contract by returning the note and deed

1    of trust before they were satisfied or rather that Plaintiff had satisfied the note and Defendant

2    therefore returned the note and the deed of trust.  However, Plaintiff alleges that Defendant then

3    requested a cash deposit or a letter of credit in lieu of the promissory note in order to assist

4    Defendant in obtaining a construction loan. (*See id.* ¶ 10).  On or about October 29, 2008, Defendant

5    admitted it did not have the financing required to proceed under the Development Agreement. (*Id.*

6    ¶ 11).

7         Plaintiff sued Defendant in this Court on four causes of action.  First, Plaintiff requests a

8    declaration that Plaintiff's performance under the Development Agreement has been made

9    impracticable through no fault of its own and that the purpose of the Development Agreement has

10   been frustrated.  Second, Plaintiff requests a declaration that Defendant has breached the implied

11   covenant of good faith and fair dealing under the Development Agreement.  Third, Plaintiff seeks

12   rescission of both the Development Agreement and the Sales Agreement due to Defendant's "failure

13   of consideration" under the former.  Fourth, Plaintiff asks the Court to enjoin Defendants from

14   foreclosing on the $500,000 note and deed of trust.  Defendant has moved to dismiss for failure to

15   state a claim.

16   **II.    Rule 12(b)(6) STANDARDS**

17        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

18   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what

19   the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

20   Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails

21   to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm□n*, 720 F.2d

22   578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to

23   state a claim, dismissal is appropriate only when the complaint does not give the defendant fair

24   notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v.*

25   *Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a

claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

///

1    ///

2    ///

3    **III.    ANALYSIS**

4           The first two causes of action invoke the Court's power to enter declaratory judgments:

5           In a case of actual controversy within its jurisdiction . . . any court of the United
6           States, upon the filing of an appropriate pleading, may declare the rights and other
             legal relations of any interested party seeking such declaration, whether or not further
             relief is or could be sought. Any such declaration shall have the force and effect of
7           a final judgment or decree and shall be reviewable as such.

8    28 U.S.C. § 2201. Such judgments may not cross the line into advisory opinions; there must be a

9    case or controversy cognizable under Article III. *Calderon v. Ashmus*, 523 U.S. 740, 745–46 (1998).

10   In other words, the harm alleged must be complete or imminent, not "hypothetical." Se*e id.* at 746.

11          **A.     Impracticability and Frustration of Purpose**

12                  **1.     Impracticability**

13          Nevada recognizes the impracticability defense to a contract in both Uniform Commercial

14   Code and common-law contracts, though the standards for showing impracticability under the two

15   kinds of contracts differ. *See Helms Constr. & Dev. Co. v. State, ex rel. Dep't of Highways*, 634 P.2d

16   1224, 1225 (Nev. 1981). The agreements at issue in this case are not for the sale of goods, and are

17   therefore common-law contracts. Under the common law, "performance [is] excused if the

18   promisor's performance 'is made impossible or highly impractical by the occurrence of unforeseen

19   contingencies, but if the unforeseen contingency is one which the promisor should have foreseen,

20   and for which he should have provided, this defense is unavailable to him.'" *Id.* (citations omitted)

21   (holding that the Arab oil embargo of the late 1970s was not an unforeseen contingency under the

22   rule). For a circumstance to constitute an unforeseen contingency giving rise to the defense of

23   impracticability, it must be a circumstance giving rise to an unforeseen cost increase that is "more

24   than merely onerous or expensive," but is so great that "it [is] positively unjust to hold the parties

25   bound." *Id.* (citation omitted). The Restatement states the rule thus:

1   ///

2   ///

3         Where, after a contract is made, a party's performance is made impracticable
      without his fault by the occurrence of an event the non-occurrence of which was a
4     basic assumption on which the contract was made, his duty to render that
      performance is discharged, unless the language or the circumstances indicate the
5     contrary.

6   Restatement (Second) of Contracts § 261 (1981).  "Events that come within the rule stated in this

7   Section are generally due either to 'acts of God' or to acts of third parties." *Id.* cmt. d.  An example

8   of circumstances sufficient to warrant the defense is the closing of a port due to quarantine. *See id.*

9   illus. 1.  Examples of circumstances insufficient to warrant the defense include the failure of a bank

10  where a party's only funds are located, an employer's discontinuation of business and discharge of

11  a contracted employee due to expensive governmental regulations, and the inability of a seller to

12  deliver specific promised goods due to his business being put into receivership. *See id.* illus. 2–4.

13        Plaintiff identifies no unforeseen contingencies, and certainly no acts of God or even acts of

14  third parties.  Defendant's alleged failure to perform is not an unforeseen contingency giving rise to

15  a defense of impracticability.  It is an allegation of Defendant's own breach.  Moreover, insofar as

16  Plaintiff attempts to obtain a declaration that he is entitled to the defense of impracticability as

17  against a putative suit against him for breach of contract by Defendant, Plaintiff requests an advisory

18  opinion, and this Court may not issue one. *Calderon*, 523 U.S. at 745–46.

19              **2.     Frustration of Purpose**

20        The Nevada Reports do not appear to include any cases addressing the contractual defense

21  of frustration of purpose.  The Restatement states the rule thus:

22        Where, after a contract is made, a party's principal purpose is substantially
      frustrated without his fault by the occurrence of an event the non-occurrence of
23    which was a basic assumption on which the contract was made, his remaining duties
      to render performance are discharged, unless the language or the circumstances
24    indicate the contrary.

25  Restatement (Second) of Contracts § 265 (1981).  Examples of circumstances sufficient to warrant

the defense include the cancellation of a parade for which a party was to pay another party to view it from his window, the cancellation of an advertising contract when the event to be advertised is cancelled due to war, the cancellation of a hotelier's contract with a country club under which the hotelier was to pay the club for his guests' use of the country club's facilities where the hotel burned down, and interceding governmental regulations prohibiting the activities contracted for. *See id.* illus. 1–4.    Examples of circumstances insufficient to warrant the defense include interceding governmental regulations prohibiting a buyer's primary intended use of goods but not preventing any reasonable disposition of the goods, and a change in traffic regulations making operation of a gasoline station impossible without substantial losses, so long as operation is in fact still possible. *See id.* illus. 5–6.

Plaintiff identifies no external frustration of the purpose of the contract apart from Defendant's alleged breach.  And like impracticability, frustration of purpose is a defense, "not a cause of action." *See Far W. Fed. Bank, S.B. v. Office of Thrift Supervision-Dir.*, 119 F.3d 1358, 1364 (9th Cir. 1997) (citing Restatement (Second) of Contracts § 265).  Insofar as Plaintiff brings his declaratory judgment action in order that the Court declare his entitlement to this defense in a putative suit against him by Defendant for breach of contract, he requests an impermissible advisory opinion.

Nor is an affirmative breach of contract claim viable, because, as discussed at oral argument, Defendant was only required to use its best efforts to obtain financing.  Also, Plaintiff failed to mitigate.  Plaintiff's own failure to mitigate by obtaining its own financing to complete the project itself shows that financing was not reasonably available.  Plaintiff in fact admitted at oral argument that Max Baer, like Defendant, did not intend to go forward with the development because of the reduction in value of the property.  It is difficult to see how expectancy damages could possibly be supported under such circumstances.  Moreover, the contract specifically notes that the sole remedy in the case of non-completion was for Plaintiff to take over the project and seek Defendant's pro rata

share of the improvement costs.  The Court dismisses this cause of action.

### B.    Implied Covenant of Good Faith and Fair Dealing

Every contract gives rise to a duty not to act arbitrarily or unfairly to the detriment of the other party. *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007).  Breach of this duty is a tort different in nature from a claim for the underlying breach of contract. *See Ins. Co. of the West v. Gibson Tire Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006).  A bad faith claim is predicated on the abuse of a fiduciary relationship existing between parties to certain kinds of contracts; it does not arise simply from a particularly egregious or willful breach of a contract, as litigants often imply by reflexively pleading bad faith along with nearly every breach of contract claim:

> Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only "in rare and exceptional cases" when there is a special relationship between the victim and tortfeasor.  A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility."  Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers.  Each of these relationships shares "a special element of reliance" common to partnership, insurance, and franchise agreements.  We have recognized that in these situations involving an element of reliance, there is a need to "protect the weak from the insults of the stronger" that is not adequately met by ordinary contract damages.  In addition, we have extended the tort remedy to certain situations in which one party holds "vastly superior bargaining power."

*Id.* (footnotes omitted).  The Washington Supreme Court has similarly described the bad faith tort as "the intentional abuse of a fiduciary relationship." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998).  Accordingly, the most common and appropriate targets of bad faith claims are insurers. *See, e.g.*, *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).

When there is no fiduciary relationship, as here, a Plaintiff can still show a breach of contract under a "good faith and fair dealing" theory when a defendant does not violate the letter of a contract but treats the other party unfairly under it:

> A good, illustrative example of a claim for contract damages for breach of the covenant of good faith and fair dealing can be seen in percentage lease cases.  For example, if a lessee agrees to pay a certain percentage of gross sales receipts as rental and then deliberately alters its business in a way that reduces expected sales (say, by diverting business to another store for the sole purpose of bringing down the rental), the lessee would not be acting in good faith.  In such a case the lessee would be

abiding with the literal terms of the contract but could still be liable for losses resulting from breach of the covenant of good faith.

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 924 n.6 (Nev. 1991) (citation omitted). There is no evidence of an analogous fact-pattern in this case. Here, Defendant is alleged to have violated the literal terms of the contract. Defendant is not alleged to have adhered to the literal terms of the contract but otherwise treated Plaintiff unfairly. Therefore, the Court dismisses the second cause of action.

### C.   Rescission

Plaintiff requests to be released from the Sales Agreement and the Development Agreement for "failure of consideration." This appears to be implausible. The contracts on their faces require valuable consideration from both parties. Plaintiff's "lack of consideration" argument appears to rest on its claim that Defendant has not completed the improvements contemplated under the Development Agreement. This does not constitute a "lack of consideration," which is merely a measure of what is promised under the contract, but an allegation of failure to perform, i.e., breach, which cause of action has been addressed.

### D.   Injunctive Relief

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365,

1    374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test).  The Ninth Circuit has

2    explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*, and that "[t]he

3    proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is

4    likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

5    preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

6    interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S.

7    Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-Winter, "sliding-scale" standard

8    and remanding for application of the proper standard).

9            A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter* parsed the

10   language of *Winter* and subsequent Ninth Circuit rulings and determined that the sliding scale test

11   remains viable when there is a lesser showing of likelihood of success on the merits amounting to

12   "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See*

13   *Alliance for the Wild Rockies v. Cottrell*, No. 09-35756, 2010 WL 2926463, at *5–7 (9th Cir. July

14   28, 2010).  As a preliminary matter, to the extent this interpretation of *Winter* is inconsistent with

15   that in *Selecky*, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc)

16   (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may

17   overrule a decision by a three-judge panel).  In any case, the Supreme Court has made clear that a

18   movant must show both "that he is *likely* to succeed on the merits [and] that he is *likely* to suffer

19   irreparable harm in the absence of preliminary relief . . . ." *Winter*, 129 S. Ct. at 374 (citing *Munaf*

20   *v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987);

21   *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added).  To satisfy *Winter*,

22   the movant must show that he is "likely" to succeed on the merits.  To the extent the *Cottrell* court

23   meant to imply that its "serious questions" standard was a lesser standard than "likely," it is

24   inconsistent with *Winter* and *Selecky*.  The Court must reconcile the cases by interpreting the *Cottrell*

25   "serious questions" language to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not

as being in competition with it.  The movant must therefore show that there are serious questions as to the merits of the case, *such that* success on the merits is likely.  A claim can be weaker on the merits if it raises "serious questions" and the amount of harm the injunction will prevent is very great, but the chance of success on the merits cannot in any case be weaker than "likely."

Because Plaintiff's underlying claims will be dismissed, the request for injunctive relief will also be dismissed.  If Defendant forecloses on Plaintiff's property, Plaintiff may file an action for injunctive relief in state court to prevent foreclosure if it believes it has a defense to the note and deed of trust.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 6) is GRANTED.

IT IS SO ORDERED.

DATED: This 17th day of September, 2010.


_____
ROBERT C. JONES
United States District Judge